Members of the court, counsel, my name is Landon Brown and I represent the appellants in this matter. I'd like to reserve five minutes for rebuttal. I'd like to focus on the questions that the panel provided in its docket entry. First, did defendants exceed the scope of consent by using tear gas and causing damage to plaintiff's property? The answer that question is no. Scope of communication between the consenter... She gave them authority to go in her house and arrest somebody, right? Yes. What they did was they spent an hour and a half before they went in the house, not going in the house, but putting tear gas into the house in order to get the guy to come out so they didn't have to go in the house. So how could that possibly be within the scope of the consent? Well, scope of consent... It didn't involve going in the house. I mean, I understand after they got in the what they did to search the house is a different story, but they weren't in, they weren't physically in the house, and they were nonetheless attacking the house in a way, and I gather that most of the damage came from the tear gas. Correct. I believe that most of the damage did come from the tear gas. So how is that possibly within the scope of the consent? Well, scope of consent refers to the physical footprint or reasonable expectation. That's exactly right, and this was not the because it was not going into the house, it was not going in the house. And once they obtained consent to go into the house, the manner in which they chose to go in the house is controlled by the reasonableness. Right, but they didn't go in the house. They spent an hour and a half not going in the house, but spaying it with tear gas. Correct, but that was a manner in which they were conducting the search of the inside of the house, and so in conducting the search... But the whole object of this was to get him to come out of the house so they didn't have to search the house. Correct, and that's reasonable under the Fourth Amendment due to officer safety concerns. It may be reasonable, but it's not within the footprint to which she consented. Well, when they're using tear gas to deploy it inside the home, they are still searching the inside of the home. They are searching within the confines of the walls of the home, and the damages that did occur did occur inside the home. Let me get you to get to the second piece, because if you want to save a lot of rebuttal time, you're coming close. Let's assume for the purpose of the second part of the analysis that it was beyond the scope of consent. What was the clearly established law, if any, on that being a constitutional violation? Your Honor, there is no clearly established law that would prohibit this specific conduct from occurring. Well, you just tell me what the clearly established law is. That is, that the scope of the consent... She is consenting essentially to a footprint, and the scope of the consent is what she's agreed to. And beyond that, we don't have a constitutional issue. We have a question of construing what she said and what they said. It seems to me that this is pushing qualified immunity a little bit through the wall to say that when you're dealing with a consent question, you don't look at what she consented to, and you need another case in which somebody said the same words as a matter of consent. I don't understand that. I mean, the consent is, you know, a quasi-contractual notion. It's defined in a certain way for these purposes, but you already told me how it was defined, and this is outside that. Well, I believe in this instance, the clearly established law needs to inform Sievers and Winfield that their specific conduct of creating a tactical plan... Would any reasonable person think that when somebody said that you can go in my house and arrest somebody and here's a key, that that meant you can stand outside my house for an hour and a half and spray tear gas into it in order to get the guy to come out so you don't have to go in the house? I mean, there's just no disconnect. Well, I do believe it is reasonable given the facts and circumstances that the officers were confronted with, because they were confronted with a barricaded suspect who was violent and dangerous. It might have been a reasonable search if they had the consent to do it, but as to whether they had the consent, how could any reasonable person think they had the consent? Well, there is no requirement for the officers to obtain consent as to their specific manner of which they conduct the search, and that would be unreasonable to enforce that type of requirement. That's not the question. You told me that the question is the footprint. What did she agree that they could do? Where could they go? How could they get into her house? She didn't agree that they could go into the house and arrest the guy. Now, I would agree that once they got in the house, when they're looking around, whatever they're doing, there's a reasonableness standard. But this is not in that footprint. Well, I believe the way that they entered the home is still subject to the reasonableness standard. This is not how they entered the home. It's how they didn't enter the home. Well, it is the tactic that they used to safely be able to eventually enter the home. No, they said what they were trying to do was get him out. Correct. And even if we were to say that they violated the scope of consent by first using tear gas and then waiting to see if that strategy worked and then going into the home in pursuit of consent. But I thought they first attempted to go through the front door and there was a latch on the door. They didn't do that until afterwards, right? Correct. They deployed tear gas first and then they tried to go through the front door and were unable to make it through the front door. Okay. But even if that was outside the scope of consent, from the Supreme Court case, the City of Escondido v. Emmons, I do believe there still needs to be a case on point that squarely governs the facts of this case and would inform these officers beyond doubt that when they obtain consent to search a home, they cannot first use that safety procedure of deploying tear gas. The question is the particular conduct, which is the use of tear gas to enter the home, whether that particular conduct was clearly established was unconstitutional. Correct, yes. And their specific conduct was they created the tactical plan, which eventually led to the tear gas being deployed. I actually have a slightly different question about that. They asked her, do we have permission to get inside your house and apprehend him? And she said yes and gave him a key that she was pretty sure wasn't going to work, but that came later. Is the deployment of the tear gas a method of entering the house, getting inside the house? And if so, why isn't it part of the consent? That is, you can't throw objects or put objects inside someone's house without consent any more than you can enter with your body. So I guess I'm not sure why it isn't an entry. I would agree with that. I do believe it is an entry into the home, and I believe that that entry is gauged by the reasonableness based on the facts and circumstances that the officers were confronted with. And in this case, given that they were searching for a barricaded, dangerous and violent suspect, I do think it was a reasonable step for them to take to ensure the officer's safety. Can I ask you something else about the key? It's my understanding about the key that she told them that he had locked the front door, so they knew that the key wasn't going to get them in the front door, and that there was some ambiguity in the record, and therefore construed most favorably to her, that it also opened the back door. Correct. She did know that there was a chain. And the police officer knew because she told him? Yes. All right. So she wasn't hiding it. By giving him the key, she wasn't playing a game on them. No. They knew that it wasn't going to get them in the front door. Correct. But it appears that it would have gotten them in the back door. Correct. And just to back up, the officer who she provided the key with, Officer Richardson, did know that it was locked with a chain. Right. The officers who created the tactical plan, I don't know if there's anything in the record, one way or another, whether they actually know. But when she gave it to them, she wasn't fooling anybody. Correct. Unless the panel has any other questions, I'll reserve the remainder of my time. You may do that. Your Honors, Counsel, may it please the Court. My name is Jeremiah Hudson. I represent Shanese West. For the purposes of scope of consent, the question at issue is whether a reasonable, typical person would understand that West's consent for officers to enter the residence to retrieve Fabian. I thought the question is whether the conduct they engaged in was clearly established was unlawful. And what case do you have that says that? Your Honor, we don't have any case that is directly on point that will show appellants that their conduct is a clear violation of law. This, in my opinion, is the obvious case that the Supreme Court references in Casella and as recently as Emmons. With regard to this consent question, I mean, are you arguing consent or you're not arguing consent? We're arguing... Are you arguing the scope of the consent or you're not? Yes, Your Honor, I'm arguing. Right, and he tells us what the standard is with regard to the scope of consent and i.e. whether she agreed to the footprint, so to speak. Do you disagree with that standard? I do, Your Honor. The standard is, and this is set forth in Hemino, is what would the typical reasonable person have understood the exchange between the officer and person consenting? That's what needs to be judged here when the government asks an individual for consent to go into their home or to search their belongings. So do you think the scope of the consent, in looking at how a reasonable person would understand it, would depend on the nature of the thing that they are looking for? For example, if the consent is you may go into the house and look for illegal drugs, the answer as to what a reasonable person would think that means might be different than may we go into your house to arrest a dangerous felon who may be high on drugs. Yes, Your Honor, I agree with that. If the government's going to, trying to get your consent to search for drugs and there's a U.S. v. Whitehorn, I haven't cited that, but I will. Well, I guess my, the reason I'm asking is that I think it might be reasonably understood that if what you're looking for is a dangerous felon who may well be armed and high on drugs, that these kind of SWAT team techniques would be what is done and not simply I think we'll go and look in your kitchen drawers for some, you know, so why isn't this within what would be anticipated for this particular kind of search or arrest? Sure. This is a situation in which the appellants have listed out a number of things that they considered when shooting the tear gas and then ultimately going and searching Ms. West's house. Our position is that Ms. West, although she knew some of the things that also concerned the appellants, did not know all of the issues that they raised. But leave all that aside. The question was do we have permission to get into your house and apprehend him, right? Yes. Okay. They spent an hour and a half not going inside their house and apprehending him but trying to get him to come out. And most of the damage came from that. So what does it have to do with her consent? I mean, it just seems you're directing all this in the wrong place. Well, I think the consent, the scope of consent issue is not on the search but it's on the seizure that's implied when you give officers permission to go in and search your home or do something else. How is it they had dropped a bomb on her house? Was that within her consent? No. Let me ask you though whether in your view it is an entry into her house to toss tear gas or any other object into the house. Isn't that an entry also? I do believe that's an entry. I can't say at this point that I have a case that supports that. So in a sense they did enter her house right away. They just didn't do it with human beings at the beginning. They did it with tear gas at the beginning. And that still raises all the issues that you've raised but it's not a non-entry. Yes. Okay. Well, if he dropped a bomb, that would be getting inside her house too. Then you could see everything inside the house once they dropped the bomb, right? Yes, Your Honor. I'm not completely sure I'm following you on that. Well, I'm simply suggesting that your argument seems to be about what they did unreasonably once they went in her house and searched. Rather than the question of whether what they did actually was within her consent because it involved something other than going inside her house and getting it. Like dropping a bomb. Yes. Right. Well. In other words, I'm asking you to accept his paradigm now. That the scope of consent is essentially a footprint question. Yes. I agree with that. All right. You do agree with it. Before you said you didn't agree with it. Yes. I'm sorry. All right. You do agree with it. Okay. I do agree. So how does this case then pan out? Well. So for the purposes of qualified immunity and clearly established law, this situation in which an individual consents to the search of the house and even assuming there may be some reasonable variations as to what that what was permitted by the consent. It's the amount of destruction. And this goes back to what I had previously said. I think the confusion is between a search and seizure is she gave permission for the officers to seize her property for a limited period of time. But doesn't the fact that there is some difference of opinion as to the scope of the consent means this is not an obvious case? No, Your Honor. I think that this is an obvious case because if police officers had kicked down her door to get in because maybe the key didn't work or the damage here, the amount of damage, the amount of the seizure here is so much beyond what can be reasonably identified. What you're saying in a way, and maybe this is the right answer, but it seems to me that the result of what you're saying is that any time a person gives consent to enter their home or other property to get somebody who's dangerous, who might otherwise need SWAT team procedures, they're not really giving that consent because it could be very destructive because it often involves this sort of procedure. So it may just be that you can't give consent in this situation unless you're told all of those things. But if there had been a warrant, it could have been this destructive. That's correct, Your Honor. Okay. So the idea of consent isn't that it alters the scope of what's permissible under that search, but it simply obviates the need for the warrant.  I guess I have some difficulty seeing that it's a clear violation, clearly established violation, when there's consent in the same circumstance. But consent, the consent here is an individual citizen giving the government permission to go into their property. If the person giving consent doesn't know that they're consenting to something far beyond what the plain language of the interaction entailed, then they're not actually giving consent. I think when officers get a warrant to go and search a house or seize property, they are bound by the limitations of the warrant. But when a citizen gives consent, it's fundamental that a citizen knows the reason. Didn't they call the DA and didn't the DA say they needed a warrant? That is correct. That is correct, Your Honor. I don't have the case record. We know what the interaction with the DA was. I don't know the specifics as far as what officer told you. You don't know it because it's not in the record or because you don't know the record? I don't believe it's in the record. Okay. I don't know the specific language as to how Officer Hoadley asked the DA what was required, but we do know that he asked the DA, since they had consent, if they needed a warrant. There is a case on point, and I don't have it right in front of me. Well, that's the question. What did he say their consent was? Did he say what he wanted to do or what the consent was when he asked the DA this? I don't believe that's in the record as to what was said. Okay. I don't have any more questions. I think you've exceeded your time, and we don't. Thank you. Thank you very much. Do you have a bit of rebuttal? Thank you. To clarify about the information that was presented to the DA, to the prosecutor, the record does show that the law enforcement officers informed the prosecuting attorney of the facts that were occurring at the scene. We don't know what those specific facts were because the recollection at the time of those depositions wasn't clear. But what was clear is that the law enforcement officer informed the prosecutor that it was a search for a person and not a search for drugs. And he said, and we have consent? Yes, they did inform that consent that they obtained consent. And did he say what the consent was? No. The individuals involved didn't have that recollection, and the prosecutor was also deposed and simply couldn't recall the specificity of the incident. I do agree that this is not an obvious case. This is not your run-of-the-mill Fourth Amendment case where consent was not obtained and yet the officer still went in. And as a result, I do believe that a precedential case is required on point to squarely govern the facts of this case in order to inform these officers that their specific conduct was unlawful. But it has to be that, I mean, suppose, well, take my bomb example. Suppose they bombed the house. Suppose they said, well, you know, the best way to deal with this is, the only way we're going to be able to find out if he's in there is just to bomb the house. Suppose they did that. And I would argue that that's not a scope of consent issue. That's a reasonableness issue. Is that reasonable based on the facts and circumstances confronting the officer? Do you think it would be within the consent? I don't think it's even a consent issue. And so I would say that if they're only bombing the footprint of the home and nowhere outside that footprint, then, yeah, it would be within that footprint of the scope of consent. But there's a big reasonableness issue of whether or not, based on the facts and circumstances, that's allowable. I mean, it's been done. It's not that it hasn't been done. Right? Correct. Yeah. Correct. I'm out of time. Does the Court have any other questions? I don't believe that we do. Thank you, Counsel. Thank you. The case just argued is submitted. We appreciate the arguments of both of you. And we are adjourned for this morning's session.
judges: Graber, Berzon, Robreno